IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 16161782 Canada Inc., A Canadian Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>Danylo Mogyl'nyy,<br><br>*Defendant* | Case No. 25-cv-8453<br><br>**Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

This case arises from Defendant Danylo Mogyl'nyy's ongoing campaign to interfere with and damage Plaintiff's business operations by unlawfully seizing control of its website and disseminating false and harassing communications to its clients. 16161782 Canada Inc., d/b/a Stratum AI ("Stratum AI" or "Plaintiff") is an artificial intelligence technology company that depends on uninterrupted access to its website, email servers, and client communication systems to conduct daily business. Defendant is an employee of Plaintiff who is currently on administrative leave while the company investigates alleged misconduct, including false statements that he made to potential investors. Defendant has access to certain company accounts including the website, emails, and client files. After Defendant was placed on leave, he exploited those privileges in an attempt to take over Stratum AI's official website and block authorized personnel from regaining access. Defendant has also sent defamatory and harassing emails to Plaintiff's clients and business partners using Stratum AI's name in violation of his employment agreement. Just today, on October 15, 2025, Stratum AI's email servers and its Google Workspace platform were shut down

1

in the latest attempt by Defendant to disrupt Stratum AI's operations, client communication, and control of the company.

Unless this Court intervenes immediately, Stratum AI will suffer irreparable harm to its reputation, goodwill, and client relationships. Monetary damages alone cannot repair the loss of trust and disruption to operations caused by Defendant's unauthorized conduct. Accordingly, Stratum AI respectfully moves this Court for a temporary restraining order prohibiting Defendant from (1) accessing or altering Stratum AI's website, servers, or online accounts; (2) communicating with Stratum AI's clients, partners, or vendors; and (3) disseminating any further harassing or defamatory material regarding Stratum AI or its personnel, and (4) Representing himself as affiliated with Stratum AI in any future communication. Immediate injunctive relief is necessary to protect Stratum AI's property rights, and prevent further irreparable injury while this action proceeds on the merits.

**I.     Jurisdiction and Venue**

The parties are diverse. Defendant Danylo Mogyl'nyy is a citizen of New York state and Plaintiff Stratum AI is a citizen of Canada. The Court has personal jurisdiction over the Defendant because he is a citizen of the state of New York. Venue is proper in the Southern District of New York because the Defendant is domiciled in the city of New York, specifically, Roosevelt Island.

**II.    Statement of Facts**

Stratum AI is a technology company that develops artificial-intelligence software for the mining industry. Stratum AI provides mining companies with advanced maps to pinpoint where to mine for rare minerals like gold, silver, copper, and molybdenum. Danylo Mogyl'nyy is an employee at Stratum AI. *See* Ex. C. In October of 2025, Stratum AI was notified by investors about an allegation that an employee, the Defendant, was misrepresenting company valuations to potential investors. *See* Ex. D. Plaintiff engaged outside counsel to conduct an investigation into

Defendant's conduct. *Id.* After speaking with the Defendant and reviewing relevant documents, Defendant was placed on administrative leave pending further investigation. *Id.* Outside counsel informed Defendant that he should not contact Stratum AI investors, potential investors, customers, or other employees. *Id.* Days later, the Defendant orchestrated a coordinated campaign to scare potential investors, disparage and harass Stratum AI's customers, and attempt to seize control of corporate digital assets including Stratum AI's website.

Despite his suspension and multiple written notices, Defendant continues to maintain unauthorized control over Stratum AI's primary domain name, stratum.ai, through a Namecheap account that Defendant previously administered while employed at Stratum AI.

Stratum AI has confirmed that Defendant has engaged in unauthorized activity within the Namecheap account, including attempts to change the account ownership credentials to identify himself as the rightful owner of the stratum.ai domain. *See* Ex. E.

On or about October 12, 2025, the Defendant attempted to gain control of domain names owned by Stratum AI, including the domain names stratum.ai administered by the company Namecheap. *Id.* Those attempts, if successful, would deny the Plaintiff access to primary points of client contact and would impair Plaintiff's ability to communicate with customers and partners. Namecheap's Risk Management Team informed Stratum AI that its internal review had confirmed the occurrence of "unauthorized activity" associated with the stratum.ai account. The "unauthorized activity" was an attempt to take over the stratum.ai website. Namecheap's Risk Management Team confirmed that the user engaged in "unauthorized activity" was Defendant. *See Id.* ("To proceed further with the case, please confirm whether you have contacted Danylo regarding this issue."). However, Namecheap further advised that it could not transfer or restore administrative control to Stratum AI without a valid court order. *Id.*

On the morning of October 15, 2025, at around 8:53 a.m., Stratum AI's Canadian legal counsel at Norton Rose Fulbright sent the Defendant a cease-and-desist letter about his wrongful attempt to gain control of the domain names stratum.ai. and stratumai.ca. *See* Ex. F. The letter demanded that Defendant abide by the terms of his contract and cease his campaign to take over the stratum.ai website. *Id*. Later that same day, at about 2:00 p.m., Stratum AI's Google Workspace servers suddenly went offline, shutting down company email and shared files. The outage occurred just hours after the letter was sent, raising serious concern that Defendant may have interfered with the company's systems.

Next, Plaintiff has received multiple reports that Defendant has been disparaging Stratum AI to customers, potential investors, and employees. These communications include false and misleading statements concerning the Plaintiff's operations and financial condition and are being communicated both in writing and orally. The Plaintiff has reason to believe that Defendant contacted one or more of the Plaintiff's potential investors and warned them that Defendant is prepared to "burn it all down" (referring to Plaintiff) if the Plaintiff continues to investigate the Defendant's conduct. *See* Ex. G. Additionally, Defendant involved and directed Linna Li, Defendant's fiancé and a director of Stratum AI, in the misconduct described above. Specifically, Defendant instructed Ms. Li to prepare investor materials and communications containing material misstatements. Ms. Li provided coaching about how to explain or reconcile discrepancies in those materials if they were challenged. These acts have disrupted client relationships and caused significant reputational injury. Despite a cease-and-desist demand, Defendant has refused to relinquish control or cease the misconduct. In fact, hours after the cease-and-desist demand, Defendant is suspected of retaliating against Plaintiff by hijacking the company Google Workspace. Defendant has caused more than $75,000 of damages.

### A. Employment Agreement

On October 24, 2020, Defendant entered into a written Employment Agreement with Stratum AI. *See* Ex. C. That agreement contains comprehensive provisions governing ownership of intellectual property and protection of corporate assets. *See id*. Section 18 of the Employment Agreement includes express *conflict of interest* provisions declaring that all business opportunities, inventions, and developments related to Stratum AI's business "belong exclusively to the Employer." *See id.* The Employment Agreement also contains non-solicitation provisions, prohibiting Defendant for a period of two years following termination of employment from interfering with Plaintiff's customers, employees, or business relationships. *Id.* In addition, the Employment Agreement includes company property provisions requiring the immediate return of all company property and materials—whether physical, digital, or intellectual—upon termination of employment. These clauses are intended to protect Stratum AI's proprietary information, trade secrets, and technology infrastructure.

### B. Confirmatory Assignment of Intellectual Property Rights

On June 2, 2025, Defendant executed a Confirmatory Assignment of Intellectual Property Rights Agreement. *See* Ex. H. That document reconfirmed and assigned to Stratum AI "all right, title and interest throughout the world" in and to any intellectual property created or developed by Defendant during the course of employment. *See id.* The Confirmatory IP Agreement expressly includes within its scope "all work product (including software offered by Plaintiff to its customers)" and extends to "any copyrights, patents, trademarks, industrial designs, or other rights relating thereto." *Id.* The Confirmatory IP Agreement further acknowledges receipt of $2.00 in consideration together with employment consideration and includes an express waiver of all moral rights under applicable copyright law. Most importantly, the Agreement provides that "all intellectual property rights that are or were to be created, developed, authored, conceived or

5

manufactured by Assignor in the course of the Employment Agreement would be owned by the Company." *Id.* § 2.

### C. The *Stratum.ai* Domain as Stratum AI Property

The domain name stratum.ai unquestionably belongs to Stratum AI and constitutes a key element of its intellectual property portfolio. The domain was registered on July 27, 2018, for exclusive use in connection with Plaintiff's business operations, client services, and communications. The registration and renewal fees for the stratum.ai domain were paid using Stratum AI's corporate credit card, specifically a Scotiabank Visa ending in 9071, confirming corporate ownership and control. *See* Ex. I. On August 19, 2024, a Namecheap transaction in the amount of $17.18 for renewal of the stratum.ai domain was processed and paid by Stratum AI's Chief Executive Officer, Farzana Yusufali, on behalf of Stratum AI. *See id*. Since its registration, the stratum.ai domain has been used exclusively for company operations, including hosting Stratum AI's primary website, maintaining employee and client email accounts, and supporting client-facing software services. The stratum.ai domain therefore constitutes both trademark property, as it embodies Plaintiff's trade name and branding, and work product, falling squarely within the definition of intellectual property "conceived or developed" by the Defendant for Stratum AI use under both the Employment Agreement and the Confirmatory IP Agreement.

Taken together, these facts establish that Defendant's conduct constitutes a clear and continuing breach of contract, conversion of corporate property, and misappropriation of intellectual property. The evidence also demonstrates a deliberate effort to damage Plaintiff's goodwill and operations by interfering with core business assets expressly owned by Stratum AI.

### III. Legal Standard

A temporary restraining order is warranted when the moving party demonstrates: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that

the balance of equities tips in the movant's favor; and (4) that the injunction serves the public interest. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

IV.  Analysis

    A.  **Plaintiff is Likely to Succeed on the Merits**

Courts routinely find a likelihood of success when former employees unlawfully access company networks or disseminate proprietary or defamatory information. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming injunction where unauthorized access to web servers interfered with business goodwill); *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006) (Posner, J.) (holding that former employee's deletion of company data constituted Computer Fraud and Abuse Act violation); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44–46 (2d Cir. 1999) (affirming injunction against ex-employee who used confidential client information to compete). The evidence demonstrates ongoing unauthorized access and malicious intent sufficient to establish a strong likelihood of success on these claims.

    1. **Conversion**

Stratum AI is further likely to succeed on its claim for conversion. Under New York law,[1] conversion occurs when "someone, intentionally and without authority, assumes or exercises control over personal property belonging to another, interfering with that person's right of possession." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 288–89 (2007); *Fantozzi v. Axsys Techs., Inc.*, No. 07-cv-2667, 2008 WL 4866054, at *9 (S.D.N.Y. Nov. 6, 2008). The elements

---

[1] The Employment Agreement between Stratum AI and Defendant contains a choice of law provision designating Canadian law as the governing law, however tort claims fall outside such provisions. *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause.").

are: (1) legal ownership or a superior right of possession, and (2) unauthorized dominion over the property that excludes the owner's rights. *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997).

Stratum AI owns the stratum.ai domain and related data systems, which were registered, maintained, and paid for exclusively with Stratum AI funds. *See* Exhibit I. Defendant's acts—retaining administrative control after suspension, altering ownership credentials, and denying Plaintiff access—constitute wrongful dominion and control. Courts in this District recognize conversion where a former employee withholds digital property or account access belonging to an employer. *See Fantozzi*, 2008 WL 4866054, at *9 (S.D.N.Y.) (unauthorized retention of company data stated conversion claim); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116, 2009 WL 321222, at 5 (S.D.N.Y. Feb. 9, 2009) (same).

This conduct squarely falls within *Thyroff*, 8 N.Y.3d at 292, which held that electronic data "indistinguishable from printed documents" may be converted. Defendant's continued possession and control of Stratum AI's digital assets, including the *stratum.ai* domain and likely the Stratum AI Google Workspace, mirror that principle. Accordingly, Stratum AI has shown a strong likelihood of success on its conversion claim. *See Benihana*, 784 F.3d at 895.

### 2. Computer Fraud and Abuse Act

Stratum AI is also likely to succeed on its claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, which prohibits intentional, unauthorized access to a protected computer that causes damage or loss. To state a CFAA claim, a plaintiff must show that the defendant: (1) intentionally accessed a computer; (2) did so without authorization or by exceeding authorized access; (3) obtained information or caused damage; and (4) the conduct caused loss aggregating at least $5,000 in a one-year period. *Register.com*, 356 F.3d at 438; *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015); *Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005).

Here, Defendant intentionally accessed Stratum AI's domain, servers, and administrative accounts after his employment was suspended—well beyond the scope of any authorization—and altered login credentials to block Stratum AI's access. Such conduct constitutes "access without authorization." *Register.com*, 356 F.3d at 403–04 (finding repeated unauthorized use of a company's servers actionable under CFAA). It also parallels *LivePerson*, 83 F. Supp. 3d at 511, where ex-employees who retained system access and copied proprietary software stated a viable CFAA claim. Defendant's interference with the *stratum.ai* domain and disruption of email communications likewise caused significant "loss" under § 1030(e)(11), including costs to investigate and restore system integrity—losses exceeding the $5,000 statutory threshold.

Courts in this District have repeatedly issued injunctive relief to stop ongoing CFAA violations where a former employee's unauthorized access threatens business operations. *See Elsevier Inc. v. Sci-Hub*, 2015 WL 6657363, at *6 (S.D.N.Y. Oct. 28, 2015) (granting preliminary injunction for unauthorized access to publisher's servers). Because Defendant's continued misuse of Stratum AI's systems and credentials is intentional, unauthorized, and causing ongoing harm to data integrity and reputation, Stratum AI has demonstrated a clear likelihood of success on its CFAA claim.

### 3. Breach of Contract

Because this Court sits in diversity, New York's choice-of-law rules would typically determine which law governs the contract claims. *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334–36 (2d Cir. 2005); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). But because the employment contract specifies that the laws of Ontario, Canada govern, Canadian law applies. *See* Ex. C; *see also Dainippon Screen Mfg. Co. v. CF CRESNE*, 288 F.3d 251, 255 (2d Cir. 2002); *Philip Morris USA Inc. v. Veles Ltd. P'ship*, 187 F. Supp. 2d 79, 87–88 (S.D.N.Y. 2002). Under that governing law, Stratum AI readily satisfies

the elements of a breach-of-contract claim: (1) a valid and enforceable contract; (2) performance or readiness to perform by the plaintiff; (3) breach by the defendant without lawful excuse; and (4) resulting loss. *See, e.g.*, *Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd.*, No. 3:13-cv-00297 (JAM), 2019 U.S. Dist. LEXIS 134010, at *11, 22 (D. Conn. Aug. 9, 2019) ("[A] 'fundamental breach of contract is a breach that substantially deprives the innocent party of the benefit of the agreement.'") (citing *772067 Ont. Ltd. v. Vict. Strong Mfg. Corp.*, 2017 ONSC 2719, at ¶ 70 (Can. Ont.). Each element is satisfied here, and Stratum AI has a clear likelihood of success on the merits.

Stratum AI and Defendant entered into two written, enforceable agreements—the October 24, 2020 Employment Agreement and the June 2, 2025 Confirmatory Assignment of Intellectual Property Rights Agreement—each supported by consideration and clear, definite terms. These contracts explicitly assign "all right, title and interest" in intellectual property developed in the course of employment to Stratum AI, require the return of company property, and prohibit post-employment interference.

Defendant breached these agreements by retaining and asserting control over the *stratum.ai* domain, attempting to re-register it to himself through Namecheap, and refusing to return corporate assets—all in direct violation of the property-return and IP-assignment provisions. Courts have found comparable conduct sufficient for injunctive relief. *See N. Atl. Instruments*, 188 F.3d at 43–46 (affirming injunction against ex-employee who retained company property); *Register.com*, 356 F.3d at 403–04 (upholding injunction to prevent unauthorized interference with company's online property).

Monetary damages alone cannot redress this harm. Defendant's control of Stratum AI's domain and intellectual property threatens Plaintiff's goodwill, client relationships, and operations—injuries that are irreparable under Second Circuit precedent. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (loss of goodwill constitutes irreparable harm); *Elsevier*,

2015 WL 6657363, at *6 (granting injunction where unauthorized computer access caused irreparable injury to goodwill). Because Stratum AI has shown valid contracts, performance, clear breach, and continuing irreparable harm, it has demonstrated a strong likelihood of success on its breach-of-contract claim. *See Benihana*, 784 F.3d at 895 (2d Cir. 2015).

### B. Stratum AI Will Suffer Irreparable Harm Absent an Injunction

Defendant has suffered and will continue to suffer irreparable harm absent a temporary restraining order. The Second Circuit recognizes that loss of goodwill, reputation, and client trust constitutes irreparable harm. *Register.com*, 356 F.3d at 404; *Ticor Title Ins. Co.*, 173 F.3d at 69. Once customers lose confidence in a company's integrity or perceive instability, "the damage is difficult or impossible to quantify." *Id.* Monetary damages cannot restore the trust of clients who have received false and harassing communications purporting to come from Stratum AI's leadership. And Stratum AI need not show that harm has already occurred, just "that it is likely to occur." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The moving party need only show that the injury it fears is likely and imminent, not remote or speculative.").

The ongoing unauthorized access to Stratum AI's systems also presents a continuing threat of data loss and operational paralysis—further confirming the inadequacy of legal remedies. *See Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (finding irreparable harm where ex-employee threatened company's goodwill and confidential information).

### C. The Balance of Equities and Public Interest Factors Favor Plaintiff

The balance of hardships overwhelmingly favors Stratum AI. Enjoining Defendant merely requires cessation of conduct to which he has no legal entitlement, while denial of relief would allow further disruption of a lawful business. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.

Supp. 2d 515, 541 (S.D.N.Y. 2011). The public interest favors protecting lawful business operations, preventing unauthorized access to digital systems, and preserving trust in commercial communications. *See New York v. Actavis PLC*, 787 F.3d 638, 661 (2d Cir. 2015) (public interest served by maintaining fair business practices).

  **V.**  **The Court Should Not Require Petitioners to Provide Security Prior to the Temporary Restraining Order.**

  The court should not require a bond under Federal Rule of Civil Procedure 65. Under Rule 65(c), the Court has broad discretion to determine whether to require security and in what amount. In this case, Stratum AI respectfully submits that no bond is necessary because Defendant cannot credibly demonstrate any likelihood of compensable damages resulting from the requested injunction. One of the guiding principles is that a bond is required only to protect the enjoined party against damages it may suffer from a wrongful injunction. As one court in this District has observed, "a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm for the restrained party." *New York City Triathlon, LLC v. NYC Triathlon Club*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010). Because Defendant's conduct is already unlawful, and because the requested injunction merely restrains further unauthorized interference with Stratum AI's property and reputation, there is no plausible basis for concluding that Defendant will suffer any compensable injury. Accordingly, this Court should exercise its discretion to excuse the bond requirement or, alternatively, to set a purely nominal bond consistent with the minimal risk of harm to Defendant.

## CONCLUSION

  Stratum AI has taken interim protective measures—revoking access where it believed it could, communicating with affected customers and investors, and preserving electronic logs and communications for review—but the alleged conduct described above has continued and, unless enjoined by this Court, threatens further irreparable harm to Stratum AI's goodwill, client

relationships, and business operations. For the foregoing reasons, Stratum AI respectfully requests that this Court issue a preliminary injunction restraining Defendant, and all those acting in concert with him, from:

1. Accessing, modifying, or controlling Stratum AI's website, servers, or online accounts including Stratum AI's Google Workspace account;
2. Representing himself as affiliated with Stratum AI in any communication;
3. Contacting Stratum AI's clients, partners, or vendors; and
4. Disseminating any further false or harassing information concerning Stratum AI or its personnel.

Dated: October 15, 2025

Respectfully submitted,

/s/ _____

Jonathan M. Baum (SBN 6228381)
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 730-1300 / Facsimile: (202) 730-1301
jbaum@hwglaw.com

Joy Holden (SBN 90021283)*
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 796-0609 / Facsimile: (202) 730-1301
jholden@hwglaw.com

*Pro hac vice motion forthcoming*