UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 16161782 CANADA INC., A CANADIAN CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>DANYLO MOGYL'NYY,<br><br>                    Defendant. | Case No. 1:25-cv-08543-DEH |

**DECLARATION OF DANYLO MOGYL'NYY IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Danylo Mogyl'nyy, declare and certify the following under penalty of perjury:

1. My legal name is Danylo Mogyl'nyy. I also go by Daniel Mogilny. I am over the age of 21 and otherwise competent to execute this declaration. I execute this declaration based on my personal knowledge. If called to testify, I could and would testify competently to the matters detailed in this declaration.

**StratumAI Background and Corporate Structure**

2. In or around January 2020, I co-founded the StratumAI business with Farzana Yusufali under the corporate entity Stratum Technologies Incorporated ("STI"), a Delaware corporation.

3. From about January 2020 through December 2024, I was StratumAI's Chief Engineer, and was responsible for conceiving of and developing its core offering, Stratum AI Geospatial Estimator ("SAIGE"), which was in progress before the company's founding.

4. The StratumAI business in Canada was first incorporated on or about April 23, 2020 as a Canadian business corporation called 12018900 Canada Inc. ("OpCo"). At the time the

1

OpCo was incorporated, it was a wholly-owned subsidiary of STI. Since STI's inception on or around December 9, 2019, I have been its CEO and have owned 50% of STI's stock.

5.  To the best of my knowledge, the OpCo was wholly acquired by the Plaintiff in the above-captioned action (the "Action"), 16161782 Canada Inc. ("Plaintiff"), a Canadian business corporation, in or around June 2024. Upon information and belief, Plaintiff was incorporated around the same time, in connection with the transaction. Although Plaintiff claims that it does business as StratumAI, the OpCo—which is not a party to this Action—is the company doing business as StratumAI.

**My Tenure at StratumAI**

6.  On or about October 24, 2020, I entered into an employment agreement with STI ("Employment Agreement"), pursuant to which I provided software development services to the OpCo. (*See* ECF No. 9-3, Ex. C to Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order.) I have never had an employment agreement with Plaintiff or the OpCo.

7.  My Employment Agreement states that it "will inure to the benefit and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee." (Employment Agreement, ¶ 38.) "Employer" is defined as STI, and does not include subsidiaries or affiliates of STI, nor does it mention Plaintiff or the OpCo. (*See generally id.*)

8.  My Employment Agreement has never been amended, nor to the best of my knowledge as CEO of STI has it been assigned to Plaintiff or the OpCo.

9.  My Employment Agreement states that my "primary place of work will be in Toronto, ON, Canada." (*Id.* ¶ 11.)

10. In connection with the acquisition of the OpCo by Plaintiff, I executed a Confirmatory Assignment of Intellectual Property Rights Agreement ("IP Assignment Agreement"). (*See* ECF No. 9-3, Ex. C to Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order.) Although the IP Assignment Agreement purports to transfer all rights to Work Product (as defined therein) that I "conceived of or reduced to practice" in anticipation of and/or in connection with my Employment Agreement to the OpCo, the OpCo was not a party to my Employment Agreement, which the IP Assignment Agreement and Plaintiff wrongly suggest. (*See* IP Assignment Agreement at 1; Mot.[1] at 5-6 & 9-10.)

11. Beginning in or around January 2025, I ceased doing work for the OpCo under my Employment Agreement with STI. By that time, the OpCo was under Plaintiff's control and was no longer affiliated with STI. I have not been paid by either Plaintiff or the OpCo for any services rendered in since Plaintiff's acquisition of the OpCo in June 2024, with the exception of a single payment I received in December 2024.

**Domain Name Ownership**

12. I purchased the domain name "stratum.ai" on or about July 27, 2018, before any of STI, the OpCo, or Plaintiff were incorporated. Namecheap is the domain registrar for stratum.ai.

13. I registered the domain name "stratumai.com" on or about September 16, 2019, before STI, the OpCo, or Plaintiff were incorporated. Namecheap is the domain registrar for stratumai.com.

14. From the time STI was incorporated, STI paid for domain registration using its corporate credit cards. A true and accurate copy of a spreadsheet summarizing STI's reflecting

---

[1] "Mot." means Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order," dated October 15, 2025 (ECF No. 9.)

3

STI's payments on its corporate credit card to Namecheap for the stratumai.com domain is attached hereto as **Exhibit A**.

15. On or about January 5, 2025, STI renewed the stratum.ai domain for two years, charging the renewal fee to my corporate credit card. Neither Plaintiff nor the OpCo have ever paid for renewal of the stratum.ai domain.

16. I understand that Ms. Yusufali, who also had access to the Namecheap account, which is accessed through my personal email address, changed the credit card used to pay for the stratumai.com domain from STI's corporate credit card to a Scotiabank card of hers prior to the August 2025 registration renewal payment coming due. (*See* Mot. at 6.) However, Ms. Yusufali did not have my consent, as CEO of STI—the domain's owner—to do so.

**Governance Dispute and Company Investigation**

17. I believe that Ms. Yusufali has manufactured this lawsuit as a means to prevent me from accessing company financial records and information about StratumAI's clients, which would confirm that she materially misstated Plaintiff's annual recurring revenue ("ARR") to investors in an email communication dated October 12, 2025. A true and accurate copy of Ms. Yusufali's October 12, 2025 email is attached hereto as **Exhibit B**.

18. Upon information and belief, Ms. Yusufali placed StratumAI's Chief Geologist, David First, on administrative leave in connection with his efforts to gain access to Plaintiff's financial statements in order to open a bank account in Australia for the benefit of the company.

19. On or about October 7, 2025, StratumAI also placed me on administrative leave and launched a pretextual investigation of my conduct based on alleged statements to potential investors where it was claimed that I misrepresented the company's valuation. (*See, e.g.*, ECF No.

4

9-4 (Administrative Leave Notice); Yusufali Decl.[2] ¶¶ 5-7.) Ms. Yusufali has also accused me of conspiring with Linna Li,[3] who sits on Plaintiff's Board of Directors, to prepare investor materials containing misstatements. (Yusufali Decl. ¶ 14.) I did no such thing.

20. In fact, Ms. Yusufali's conduct is also being scrutinized by investors. Upon information and belief, Ms. Yusufali knowingly made inaccurate representations in her October 12, 2025 email update to investors (Ex. B) concerning the company's contracted ARR (annual recurring revenue). Investors have raised concerns about this issue, among others. With the assistance of my legal counsel, I prepared a letter to Plaintiff's Board of Directors summarizing these issues, which I have since circulated to certain investors who share my concerns. As of the time of this submission, two investors have signed the letter and transmitted it to the Board, and I expect that more submissions are forthcoming. A true and accurate copy of the letter, signed by Daniel Cheung and Ryan Watkins of Syncracy Capital, is attached hereto as **Exhibit C**.

**My Efforts to Protect STI's Assets and Restore StratumAI's Access to Information Systems**

21. After I was placed on administrative leave, I took steps to protect the intellectual property that STI owns, separate and apart from Plaintiff's and the OpCo's intellectual property.

22. On or about October 8, 2025, I contacted Namecheap because StratumAI, without authorization, removed me as an administrator of the stratum.ai domain, which is STI's property—not Plaintiff's or the OpCo's. After notifying Namecheap of this issue, Namecheap placed the account into dispute and would not let me or StratumAI access it.

23. Critically, the stratum.ai domain never stopped functioning or redirected to another website, and no records were changed. In addition, I never had access to the servers hosting

---

[2] "Yusufali Decl." means the Declaration of Farzana Yusufali in Support of Plaintiff's Application for a Temporary Restraining Order," dated October 15, 2025. (ECF No. 9-1.)
[3] Ms. Yusufali mischaracterizes Ms. Li as my spouse. (Yusufali Decl. ¶ 14.) We are engaged to be married.

5

StratumAI's website, and I could not have (and did not) take down or alter the content of StratumAI's website.

24. On or about October 15, 2025, I contacted Google because StratumAI had blocked my access to my email account, daniel@stratum.ai, after placing me on administrative leave. I opened the Google Workspace account that StratumAI currently uses in 2018, well before STI, Plaintiff, or the OpCo were incorporated. My email account, hosted on the stratum.ai domain owned by STI, contains substantial intellectual property of mine and STI's, including because it is the email account associated with access to STI's bank account and contains information related to the transaction between Plaintiff and STI of OpCo.

25. Google responded as Namecheap did, initiating a dispute. However, Google took the additional step of blocking StratumAI's access to email accounts, which I did not intend to have happen. I was only alerted to this issue through StratumAI's counsel. I never gained access to Google Workspace or took control of these accounts, nor did I have the ability to do so while the dispute was pending.

26. On or about October 17, 2025, while preserving STI's claim to ownership of the stratum.ai domain, I cooperated with StratumAI to ensure that no changes were made to the domain registrar service that could potentially disrupt the business operations of the company. I no longer have access to the Namecheap account with which the stratum.ai and stratumai.com domains are associated, and have not since I was put on administrative leave on October 7, 2025.

27. On or about October 17, 2025, while preserving STI's and my claim to ownership of the Google Workspace account hosted on stratum.ai and my personal and STI's intellectual property stored in my email account, daniel@stratum.ai, I cooperated with StratumAI to have its managerial control of the Google Workspace domain restored while the dispute over ownership is

6

pending. A true and accurate copy of an email from StratumAI's Canadian counsel to my counsel confirming that the company's access to Google Workspace was restored is attached hereto as **Exhibit D**.

28. On or about October 18, 2025, I ceded managerial control of the domain stratumai.ca—which is not at issue in this Action—to StratumAI.

### My Time in New York

29. I have maintained a residence in the Greater Toronto Area (Richmond Hill and Toronto) for about twenty-two years. I have a Canadian-issued driver's license showing my address. I have never been issued any identification documents by the United States government or New York State.

30. I visited New York for extended periods during 2024 and 2025 and stayed with Ms. Li at her apartment on Roosevelt Island. I have never been a party to the lease agreement. Ms. Li's building's property manager required her to list me as an "occupant" so that I could stay at her apartment for more than a few days at a time.

31. For a time, I had hoped to set up StratumAI's U.S. headquarters in New York City, but that never materialized. As a result, I never expected to be in New York long-term, nor did I have the right to, because I am not a lawful permanent resident of the United States or a U.S. citizen.

32. I traveled extensively in 2025. I spent part of January in Canada. I spent about half of March in Canada. I spent part of April, the entirety of May and June, and part of July in Chile, Australia, and Papua New Guinea aside from two days when I was in California. I spent nearly all of August and early September in Canada. I returned to Canada permanently in early October 2025.

33. I do not currently have a valid visa that would allow me to enter the United States, nor do I have an intention of applying for one at this time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 20, 2025, in Aurora, Ontario, Canada

Signed by:

*Danylo Mogyl'nyy*

605A3FCBC9CF457...

Danylo Mogyl'nyy