## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 16161782 CANADA INC., A CANADIAN CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> DANYLO MOGYL'NYY, <br><br> Defendant. | Case No. 1:25-cv-08543-DEH <br><br> Hon. Dale E. Ho |

**DEFENDANT DANYLO MOGYL'NYY'S MEMORANDUM IN LAW
IN SUPPORT OF HIS OPPOSITION TO PLAINTIFF'S MEMORANDUM
IN LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER**

Todd Rosenbaum
Daria Schieferstein
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022
TFRosenbaum@mintz.com
DSchieferstein@mintz.com
Tel: (212) 935-3000
Fax: (212) 983-3115

*Attorneys for Defendant Danylo Mogyl'nyy*

## <u>TABLE OF CONTENTS</u>

**Page**

FACTUAL BACKGROUND ................................................................................................. 4

    A.   StratumAI Background and Corporate Structure ........................................ 4

    B.   Defendant's Tenure at StratumAI ............................................................... 5

    C.   Domain Name Ownership ........................................................................... 6

    D.   Governance Dispute and Company Investigation ...................................... 6

    E.   Defendant's Efforts to Protect STI's Assets and
         Restore StratumAI's Access to Information Systems ................................. 7

    F.   Defendant's Canadian Domicile and Time In New York ........................... 8

ARGUMENT .................................................................................................................... 9

  I.   The Court Should Dismiss this Case for Lack of
      Personal Jurisdiction Without Addressing the TRO Motion ................................. 9

    A.   This Court Lacks General Personal Jurisdiction Over Defendant. ........... 10

    B.   This Court Lacks Specific Personal Jurisdiction Over Defendant............ 11

  II.  The Court Should Dismiss This Case Because Venue Is Improper. ................... 12

  III.  The Court Should Dismiss This Case on Grounds of Forum Non Conveniens ............... 13

    A.   Plaintiff's Selected Forum Should Not Receive Any Deference. ............. 14

    B.   Canada Is an Adequate Alternative Venue. ............................................. 15

    C.   Private and Public Interests Weigh in Favor of Dismissal. ...................... 16

  IV.  PLAINTIFF IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER. ...... 17

    A.   Plaintiff Cannot Succeed on the Merits of Its Claims ............................. 18

         1.  Conversion ..................................................................................... 18

         2.  Breach of Contract Claim ............................................................... 21

         3.  Computer Fraud and Abuse Act ...................................................... 23

    B.   Plaintiff Will Not Suffer Irreparable Harm Absent an Injunction ............. 24

i

C.   The Balance of Equities Favors Defendant, Not Plaintiff,
and an Injunction Does Not Serve the Public Interest. ........................................... 25

V.  Plaintiff's Proposed Temporary Restraining Order Is Vague and Overly Broad ....... 25

CONCLUSION ................................................................................................................... 27

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Accent Delight Int'l Ltd. v. Sotheby's,*
394 F. Supp. 3d 399 (S.D.N.Y. 2019)..............................................................................14, 15

*American Lecithin Co. v. Rebmann,*
No. 12-CV-929, 2017 WL 4402535
(S.D.N.Y. Sept. 30, 2017)...............................................................................................24

*AVRA Surgical Robotics, Inc. v. Gombert,*
41 F. Supp. 3d 350 (S.D.N.Y. 2014)...............................................................................12

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991)...........................................................................................................13

*City of New York v. Mickalis Pawn Shop, LLC,*
645 F.3d 114 (2d Cir. 2011)............................................................................................26

*City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
751 F. Supp. 3d 356 (S.D.N.Y. 2024).......................................................................14, 15

*Cruz v. St. Barnabas Hosp.,*
2017 U.S. Dist. LEXIS 107230 (S.D.N.Y. July 7, 2017) .......................................10

*Daniel v. Am. Bd. of Emergency Med.,*
428 F.3d 408 (2d Cir. 2005).............................................................................................13

*Esheva v. Siberia Airlines,*
499 F. Supp. 2d 493 (S.D.N.Y. 2007).............................................................................15

*Fischkoff v. Iovance Biotherapeutics, Inc.,*
339 F. Supp. 3d 408 (S.D.N.Y. 2018).............................................................................20

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
481 F.3d 60 (2d Cir. 2007).............................................................................................17

*Grier v. Orange Cnty.,*
No. 24-cv-02028 (NSR), 2024 U.S. Dist. LEXIS 73127
(S.D.N.Y. Apr. 19, 2024)..................................................................................................9

*Hbouss v. Bank of Montreal,*
803 N.Y.S.2d 520 (1st Dep't 2005) .................................................................................17

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
   No. 1:21-cv-00038-MKV, 2021 WL 535485
   (S.D.N.Y. Feb. 12, 2021) ................................................................................25

*In re Rezulin Prods. Liab. Litig.*,
   214 F. Supp. 2d 396 (S.D.N.Y. 2002) ...........................................................16

*Int'l Gemmological Inst., Inc. v. Indep. Gemmological Labs, Inc.*,
   No. 00 Civ. 4897 (LAK), 2000 U.S. Dist. LEXIS 12907
   (S.D.N.Y. Sept. 7, 2000) ................................................................................25

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001) (en banc) .............................................................14

*Jobpath Partners, LLC v. City of New York & CDW Gov't Serv.*,
   No. 24 Civ. 9026 (CM), 2025 WL 2855372
   (S.D.N.Y. Oct. 8, 2025) ..................................................................................23

*Jordan v. Pierre*,
   No. 18-cv-8528 (JGK) 2018 U.S. Dist. LEXIS 184590
   (S.D.N.Y. Oct. 27, 2018) ................................................................................10

*Kurzon v. Democratic Nat'l Comm.*,
   197 F. Supp. 3d 638 (S.D.N.Y. 2016) ............................................................18

*Leadsinger, Inc. v. Cole*,
   No. 05 Civ. 5606 (HPB) 2006 WL 2320544
   (S.D.N.Y. Aug. 10, 2006) ...............................................................................24

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501 (S.D.N.Y. 2015) ..............................................................24

*Lyman Rice, Inc. v. Albion Mobile Homes, Inc.*,
   89 A.D.3d 1488 (4th Dep't 2011) ..............................................................18, 19

*Maersk, Inc. v. Neewra, Inc.*,
   554 F. Supp. 2d 424 (S.D.N.Y. 2008) ............................................................14

*Narang v. Armour*,
   No. 24-CV-1125 (JPO), 2025 WL 1569644
   (S.D.N.Y. June 3, 2025) ..................................................................................10

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005) ............................................................................14

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003) ..............................................................................14

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
   76 A.D.3d 89 (2010) ........................................................................12

*Pub. Free Will Corp. v. Verizon Commc'ns Inc.*,
   No. 15-CV-6354 (RRM) (JO), 2017 WL 1047330
   (E.D.N.Y. Mar. 17, 2017) ..................................................................24

*R. Maganlal & Co. v. M.G. Chem. Co.*,
   942 F.2d 164 (2d Cir. 1991).............................................................14

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017)..........................................................10, 11

*SG Cowen Sec. Corp. v. Messih*,
   2000 WL 633434 (S.D.N.Y. May 17, 2000) ......................................25

*Sigma Lithium Corp. v. Gardner*,
   No. 00 Civ. 3228 (HB), 2025 WL 1268311
   (S.D.N.Y. May 1, 2025).....................................................................12

*Sinoying Logistics PTE Ltd. v. Yi Da Xin Trading Corp.*,
   619 F.3d 207 (2d Cir. 2010)..........................................................9, 12

*Spec Simple, Inc. v. Designer Pages Online LLC*,
   54 N.Y.S.3d 837 (Sup. Ct. N.Y. Cnty. 2017) ...................................23

*Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*,
   No. 16 Civ. 9918 (ER), 2018 WL 1027754
   (S.D.N.Y. Feb. 20, 2018) ..................................................................24

*Stich v. Rehnquist*,
   982 F.2d 88 (2d Cir. 1992) (per curiam)......................................12, 13

*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283 (2007) .........................................................................21

*VictoriaTea.com, Inc. v. Cott Beverages, Can.*,
   239 F. Supp. 2d 377 (S.D.N.Y. 2003)...........................................16, 17

*Wang v. Laview Eagle Eye Tech. Inc.*,
   No. 24-cv-01822-NSR, 2025 WL 2371222
   (S.D.N.Y. Aug. 14, 2025) ..................................................................12

*Watson v. Riptide Worldwide, Inc.*,
   2012 No. 11........................................................................................24

**Statutes**

28 U.S.C. § 1391(b) ...........................................................................................................13

Computer Fraud and Abuse Act ...............................................................................11, 23

Computer Fraud and Abuse Act under 18 U.S.C. § 1030..............................................23

C.P.L.R. § 302(a)(2) ...............................................................................................11, 12

**Other Authorities**

Fed. R. Civ. P. 4 ............................................................................................................10

Fed. R. Civ. P. 65(b)(1)..................................................................................................26

Fede. R. Civ. P. 12(b)(2)................................................................................................12

## PRELIMINARY STATEMENT

A temporary restraining order is an extraordinary remedy that should be granted only in rare cases. This is not such a case. Plaintiff 16161782 Canada Inc. ("Plaintiff"), which claims to do business as StratumAI, asserts a number of unsupported legal theories, the crux being that Defendant Danylo Mogyl'nyy, StratumAI's former Chief Engineer ("Defendant"), has wrongfully interfered with Plaintiff's business operations by unlawfully seizing control of its domain names and email accounts, and making false statements to Plaintiff's customers, vendors, and investors. In fact, Plaintiff placed Mr. Mogyl'nyy on administrative leave, blocked his access to electronic systems, launched a pretextual investigation against him, and initiated this lawsuit and filed its Motion for Temporary Restraining Order ("Motion") in an effort to prevent Mr. Mogyl'nyy from exposing Plaintiff's CEO, Farzana Yusufali, for making material financial misstatements to StratumAI's investors.

Neither Plaintiff's lawsuit nor this Motion are viable. *First*, the Complaint is subject to dismissal in its entirety because the Court does not have personal jurisdiction over Defendant, who is a Canadian citizen living in Canada, and who has not been served with the Summons and Complaint in this action. In addition, venue is not appropriate in this District, and the Complaint should also be dismissed based on the doctrine of *forum non conveniens*. Respectfully, the Court must reach these issues and dismiss the case before considering entry of a TRO.

*Second*, Plaintiff has not established and cannot establish a likelihood of success on any of its claims. With regard to its conversion claim, the property allegedly converted belongs to Defendant or Stratum Technologies Incorporated ("STI"), a Delaware corporation that is distinct from Plaintiff and of which Defendant is the CEO and a 50% shareholder. STI is the former parent company of the StratumAI operating company, 12018900 Canada Inc. ("OpCo"). Although

Plaintiff acquired the OpCo in June 2024, the OpCo does not own STI's intellectual property (such as the domain names and Google Workspace account Plaintiff has attempted to put in issue), nor is there an identity between Plaintiff and the OpCo that would give *Plaintiff* the ability to maintain an action against Defendant for conversion. And, the OpCo is not a Plaintiff in this lawsuit.

Plaintiff's claim for breach of contract, based on Defendant's employment contract and an intellectual property transfer agreement, suffers a similar fate. Defendant's employment contract is with STI, not *Plaintiff*, and it has not been amended nor assigned to Plaintiff. The intellectual property transfer agreement purports to transfer certain intellectual property from Defendant to the OpCo, not to *Plaintiff*. Under black-letter Canadian law, which governs the contracts, *Plaintiff* does not have privity of contract with Defendant that would enable Plaintiff to enforce either agreement, nor is it a third-party beneficiary of either agreement.

Plaintiff's claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, likewise fails because it requires Defendant to have gained access to Plaintiff's information technology systems in an unauthorized manner. Not only do the systems belong to STI or the OpCo, *not Plaintiff*, but Plaintiff locked Defendant out of these systems when it placed him on administrative leave before commencing this action, and Defendant never regained access to the systems, let alone unauthorized access.

Plaintiff also cannot succeed on its claim for tortious interference with prospective business advantage – which does not even feature in its Motion – for similar reasons. Critically, the business relationships Plaintiff vaguely claims Defendant interfered with involve STI's or the OpCo's contracts, *not Plaintiff's*. Plaintiff therefore has no claim for tortious interference with its own contractual relationships, and it cannot maintain this lawsuit on behalf of the OpCo, a distinct entity.

*Third*, Plaintiff's arguments as to the other factors the Court must examine before entering a TRO are unpersuasive. Plaintiff has not shown that *Plaintiff* will suffer irreparable harm in the absence of an injunction, because the intellectual property and business relationships at issue belong to Defendant, STI, or the OpCo, not Plaintiff. Moreover, Defendant has taken steps to ensure that Plaintiff's business operations are not compromised during the pendency of the dispute: he has no ability to change the records relating to the stratum.ai and stratumai.com domains, nor does he have the ability to modify or take down StratumAI's website. Likewise, Defendant has cooperated with Plaintiff to restore its access to the Google Workspace administrator account (and therefore, the email accounts hosted on the stratum.ai domain), and Defendant himself no longer has access even though he owns the Google Workspace account, which he created before any of STI, the OpCo, or Plaintiff were incorporated. Plaintiff also cannot establish that the balance of the equities favor it over Defendant, because Plaintiff cannot succeed on the merits of its claims, and also because a TRO would deprive Defendant of control over property and relationships that belong to him and/or STI.

Finally, even assuming *arguendo* that the intellectual property and business relationships Plaintiff has attempted to put in issue in this dispute belong to Plaintiff, Plaintiff's proposed TRO is vague and overly broad. Plaintiff cannot obtain a TRO preventing Defendant from "accessing, modifying, or controlling" information technology systems he does not even have access to. Further, Defendant should not be made to refrain from representing himself as affiliated with StratumAI: he co-founded the business and it was a subsidiary of STI from the time of founding until June 2024, when it was acquired by Plaintiff. Defendant also must not be enjoined from contacting clients, vendors, or "partners" of STI's, and in any event, the term "partners" is undefined and thus too broad. Finally, Plaintiff cannot obtain a TRO preventing Defendant from

making "further false or harassing statements concerning Stratum AI or its personnel" where it has not and cannot establish that statements allegedly made by Defendant were false or "harassing" in the first place.

These circumstances simply do not justify granting Plaintiff any relief, let alone the extraordinary injunctive relief it requests. Respectfully, this Court should reject Plaintiff's unsubstantiated claims in view of the record evidence presented herein, deny its Motion for Temporary Restraining Order, and dismiss this frivolous action in its entirety.

## FACTUAL BACKGROUND

### A.     StratumAI Background and Corporate Structure

In January 2020, Defendant Danylo Mogyl'nyy co-founded the StratumAI business with Farzana Yusufali under the corporate entity Stratum Technologies Incorporated, a Delaware corporation. (Mogyl'nyy Decl.[1] ¶ 2.) The StratumAI business in Canada was first incorporated on April 23, 2020 as a Canadian business corporation called 12018900 Canada Inc., which is the StratumAI operating company. At the time the OpCo was incorporated, it was a wholly-owned subsidiary of STI. (*Id.* ¶ 4.) Since STI's inception on or around December 9, 2019, Defendant has been its CEO and has owned 50% of STI's stock. (*Id.*) In June 2024, the OpCo was wholly acquired by the Plaintiff in the above-captioned action (the "Action"), 16161782 Canada Inc., a Canadian business corporation. (*Id.* ¶ 5.) Plaintiff was incorporated around the same time, in connection with the transaction. (*Id.*) Although Plaintiff claims that it does business as StratumAI, the OpCo—which is not a party to this Action—is the company doing business as StratumAI. (*Id.*)

---

[1] "Mogyl'nyy Decl." means the Declaration of Danylo Mogyl'nyy in Support of Opposition to Plaintiff's Motion for Temporary Restraining Order, dated October 20, 2025 and filed herewith.

### B.    Defendant's Tenure at StratumAI

On October 24, 2020, Defendant entered into an employment agreement with STI ("Employment Agreement"), pursuant to which he provided software development services to the OpCo.  (*Id.* ¶ 6; ECF No. 9-3, Ex. C to Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order.)  At no point in time has Defendant ever had an employment agreement with Plaintiff or the OpCo.  (Mogyl'nyy Decl. ¶ 6.)  Defendant's Employment Agreements states that it "will inure to the benefit and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee."  (Employment Agreement, ¶ 38.)  "Employer" is defined as STI, and does not include subsidiaries or affiliates of STI, nor does it mention Plaintiff or the OpCo.  (*See generally id.*).  Defendant's Employment Agreement has never been amended nor has it been assigned to Plaintiff or the OpCo.  (Mogyl'nyy Decl. ¶ 8.)  Defendant's Employment Agreement states that his "primary place of work will be in Toronto, ON, Canada."  (Employment Agreement, ¶ 11.)

In connection with the acquisition of the OpCo by Plaintiff, Defendant executed a Confirmatory Assignment of Intellectual Property Rights Agreement ("IP Assignment Agreement").  (Mogyl'nyy Decl. ¶ 10; ECF No. 9-3, Ex. C to Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order.)  Although the IP Assignment Agreement purports to transfer all rights to Work Product (as defined therein) that Defendant "conceived of or reduced to practice" in anticipation of and/or in connection with his Employment Agreement to the OpCo, the OpCo was not a party to Defendant's Employment Agreement, which the IP Assignment Agreement and Plaintiff wrongly suggest.  (*See* IP Assignment Agreement at 1; Mot.[2] at 5-6 & 9-

---

[2] "Mot." means Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order," dated October 15, 2025 (ECF No. 9.)

10; Mogyl'nyy Decl. ¶ 10.)  Beginning in January 2025, Defendant ceased doing work for the OpCo under his Employment Agreement with STI.  (*Id.* ¶ 11.)  By that time, the OpCo was under Plaintiff's control and was no longer affiliated with STI.  (*Id.*)

### C.    Domain Name Ownership

Defendant purchased the domain name "stratum.ai" on July 27, 2018, before any of STI, the OpCo, or Plaintiff were incorporated.  Namecheap is the domain registrar for stratum.ai.  (*Id.* ¶ 12.)  Defendant registered the domain name "stratumai.com" on September 16, 2019, before STI, the OpCo, or Plaintiff were incorporated.  Namecheap is the domain registrar for stratumai.com. (*Id.* ¶ 13.)  From the time STI was incorporated, STI paid for domain registration using its corporate credit cards.  (*Id.* ¶ 14 & Ex. A.)  On January 5, 2025, STI renewed the stratum.ai domain for two years, charging the renewal fee to Defendant's corporate credit card.  (*Id.* ¶ 15 & Ex. A.)  In August 2025, Ms. Yusufali, who also had access to the Namecheap account, which is accessed through Defendant's personal email address, changed the credit card used to pay for the stratumai.com domain from STI's corporate credit card to a Scotiabank card of hers prior to the August 2025 registration renewal payment coming due.  (*Id.* ¶ 16; *see* Mot. at 6.)  However, Ms. Yusufali did not have Defendant's consent, as CEO of STI—the domain's owner—to do so.  (*Id.* ¶ 16.)

### D.    Governance Dispute and Company Investigation

In the run-up to Plaintiff commencing this Action and filing the instant Motion for TRO, Defendant and others at StratumAI grew concerned that Plaintiff's CEO, Farzana Yusufali, was misrepresenting the company's financials.  Ms. Yusufali placed StratumAI's Chief Geologist, David First, on administrative leave in connection with his efforts to gain access to Plaintiff's financial statements in order to open a bank account in Australia for the benefit of the company. (*Id.* ¶ 18.)  In light of this development, Defendant became concerned about the company's financials.  In response to Defendant expressing concerns to certain investors, on October 7, 2025,

Ms. Yusufali placed Defendant on administrative leave and launched a pretextual investigation into his conduct based on alleged statements to potential investors where it was claimed that he misrepresented the company's valuation. (*See, e.g.*, ECF No. 9-4 (Administrative Leave Notice); Yusufali Decl.[3] ¶¶ 5-7.) Ms. Yusufali has also accused Defendant of conspiring with Linna Li, who sits on Plaintiff's Board of Directors, to prepare investor materials containing misstatements.[4] (Yusufali Decl. ¶ 14.)

Subsequently, on October 12, 2025, Ms. Yusufali materially misstated the company's annual recurring revenue ("ARR") to investors in an email. (Mogyl'nyy Decl. ¶ 20 & Ex. B.) In response to investor concerns about this issue, Defendant and his counsel prepared a letter to Plaintiff's Board of Directors. Defendant circulated this letter to certain investors who shared his concerns. Multiple investors have since signed the letter and transmitted it to the Board. (*Id.* ¶ 20 & Ex. C.)

### E.    Defendant's Efforts to Protect STI's Assets and Restore StratumAI's Access to Information Systems

After Defendant was placed on administrative leave, he sought to protect the intellectual property that STI owns, separate and apart from Plaintiff's and the OpCo's intellectual property. (*Id.* ¶ 21.) On October 8, 2025, Defendant contacted Namecheap because StratumAI, without authorization, removed him as an administrator of the stratum.ai domain, which is STI's property—not Plaintiff's or the OpCo's. (*Id.* ¶ 22.) After notifying Namecheap of this issue, Namecheap placed the account into dispute and would not let Defendant or StratumAI access it. (*Id.*) Critically, the stratum.ai domain never stopped functioning or redirected to another website,

---

[3] "Yusufali Decl." means the Declaration of Farzana Yusufali in Support of Plaintiff's Application for a Temporary Restraining Order," dated October 15, 2025. (ECF No. 9-1.)

[4] Ms. Li and Defendant are engaged to be married. (Mogyl'nyy Decl. ¶ 19 n.3.)

and no records were changed.  In addition, Defendant never had access to the servers hosting StratumAI's website, and Defendant could not have (and did not) take down or alter the content of StratumAI's website.  (*Id.* ¶ 23.)

On October 15, 2025, Defendant contacted Google because StratumAI had blocked his access to his email account, daniel@stratum.ai, after placing him on administrative leave.  (*Id.* ¶ 24.)  Defendant opened the Google Workspace account that StratumAI currently uses in 2018, well before STI, Plaintiff, or the OpCo were incorporated.  (*Id.*)  Defendant's email account, hosted on the stratum.ai domain owned by STI, contains substantial intellectual property of his and STI's. (*Id.*)  Google responded as Namecheap did, initiating a dispute.  However, Google took the additional step of blocking StratumAI's access to email accounts, which Defendant did not intend to have happen.  Defendant was only alerted to this issue through StratumAI's counsel.  (*Id.* ¶ 25.) Defendant never gained access to Google Workspace or took control of these accounts, nor does he have the ability to do so.  (*Id.*)

On October 17, 2025, while preserving STI's claim to ownership of the stratum.ai domain, Defendant cooperated with StratumAI to ensure that no changes were made to the domain registrar service that could potentially disrupt the company's operations.  (*Id.* ¶ 26.)  Defendant no longer has access to the Namecheap account with which the stratum.ai and stratumai.com domain names are associated.  (*Id.*)  On the same day, while preserving STI's and his claim to ownership of the Google Workplace account hosted on stratum.ai and his personal and STI's intellectual property stored in his email account, daniel@stratum.ai, Defendant cooperated with StratumAI to have managerial control of the Google Workspace domain restored while the dispute over ownership is pending.  (*Id.* ¶ 27 & Ex. D.)

### F.    Defendant's Canadian Domicile and Time In New York

Defendant has maintained a residence in Ontario for about twenty-two years.  (*Id.* ¶ 29.)

Defendant visited New York for extended periods during 2024 and 2025 and stayed with Ms. Li at her apartment on Roosevelt Island. He has never been a party to the lease agreement. (*Id.* ¶ 30.) Ms. Li's building's property manager required her to list Defendant as an "occupant" so that he could stay at her apartment for more than a few days at a time. (*Id.*)

Defendant had hoped to set up StratumAI's U.S. headquarters in New York City, but that opportunity never materialized. (*Id.* ¶ 31.) As a result, Defendant never expected to be in New York long-term, nor did he have the right to, because he is not a lawful permanent resident of the United States or a U.S. citizen. (*Id.*) Defendant traveled extensively in 2025. He spent part of January and half of March in Canada, and he spent part of April, the entirety of May and June, and part of July in Chile, Australia, and Papua New Guinea aside from two days when he was in California. (*Id.* ¶ 32.) Defendant spent nearly all of August and early September in Canada. (*Id.*) He returned to Canada permanently in early October 2025. (*Id.*) Defendant does not currently have a valid visa that would allow him to enter the United States, nor does he have an intention of applying for one at this time. (*Id.* ¶ 33.)

## ARGUMENT

**I.    The Court Should Dismiss this Case for Lack of Personal Jurisdiction Without Addressing the TRO Motion.**

This Court should dismiss this case *sua sponte* because it cannot assert personal jurisdiction over Defendant, and Defendant has not waived his objection to personal jurisdiction. *Cf. Sinoying Logistics PTE Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (observing that "a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented … to the jurisdiction of the court."); ECF Nos. 5 & 13 (noting Defendant's objection to personal jurisdiction). Personal jurisdiction is a threshold issue, and the Court must be confident that it has personal jurisdiction over Defendant before considering entry of a TRO. *See, e.g., Grier*

*v. Orange Cnty.*, No. 24-cv-02028 (NSR), 2024 U.S. Dist. LEXIS 73127, at *11 n.4 (S.D.N.Y. Apr. 19, 2024) (denying TRO motion where, *inter alia*, "Plaintiff [had] not effected service of the summons and Complaint on all named Defendants"); *Jordan v. Pierre*, No. 18-cv-8528 (JGK) 2018 U.S. Dist. LEXIS 184590, at *5-6 (S.D.N.Y. Oct. 27, 2018) (noting denial of motion for TRO and preliminary injunction because "there is not yet personal jurisdiction over the defendants because service of the summons and complaint has not been made upon them.")  Not only has Defendant failed to serve the Summons and Complaint on Plaintiff in accordance with Fed. R. Civ. P. 4 and as directed by this Court, but as explained below, it cannot establish that this Court has general or specific personal jurisdiction over Plaintiff, necessitating denial of the motion for temporary restraining order and dismissal of the Action.  *Cruz v. St. Barnabas Hosp.*, 2017 U.S. Dist. LEXIS 107230, at *2 (S.D.N.Y. July 7, 2017); ECF No. 7.

A.    **This Court Lacks General Personal Jurisdiction Over Defendant.**

In the Second Circuit "[g]eneral jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 62 (2d Cir. 2017); *Narang v. Armour*, No. 24-CV-1125 (JPO), 2025 WL 1569644, at *17-18 (S.D.N.Y. June 3, 2025).

Simply, Defendant is not and has never been domiciled in New York.  In fact, Defendant is a citizen and resident of Toronto, Ontario, Canada.  Defendant has a Canadian driver's license which reflects the Canadian address where he has maintained a residence for 22 years.  (Mogyl'nyy Decl. ¶ 29.)  Defendant is presently in Canada where he intends to remain. (*Id*. ¶¶ 32; 33.)

Plaintiff's misrepresentations undermine its jurisdictional allegations and cannot support its choice of forum: Defendant's fiancé is the leaseholder of the Roosevelt Island apartment referenced in Plaintiff's complaint.  (*See* ECF No. 12-1.)  Defendant was listed as an "occupant" on the lease in order to enable him to easily visit his fiancé when he traveled to New York.

Defendant's visits to his fiancé's apartment and his being listed as an "occupant" (not a "tenant"

on the lese are insufficient to render him legally domiciled in New York. *See Reich,* 858 F.3d at

63 ("[o]wning property in a forum does not alone establish domicile. One may have more than one

residence in different parts of this country or the world, but a person may have only one domicile.")

Moreover, Defendant does not currently have a valid U.S. visa or the basis to apply for any visa

other than a tourist visa, which he does not intend to do.  (Mogyl'nyy Decl. ¶ 33.)  Accordingly,

this Court cannot exercise general personal jurisdiction over Mr. Mogyl'nyy over his objection.

**B.      This Court Lacks Specific Personal Jurisdiction Over Defendant.**

There is also no basis for the Court to assert specific personal jurisdiction over Defendant

N.Y. C.P.L.R. Section 302(a) provides that "a court may exercise personal jurisdiction over any

non-domiciliary" who: "transacts any business within the state or contracts anywhere to supply

goods or services in the state or "commits a tortious act within the state, except as to a cause of

action for defamation of character arising from the act."

N.Y. C.P.L.R. Section 302(a)(1), "authorizes jurisdiction over defendants if: 1) the

defendants transact business in New York; and 2) the cause of action arises from that transaction

of business." *Reich*, 858 F. 3d at 63.  While Plaintiff vaguely alleges that Defendant "conducts

business in New York," Plaintiff's causes of action for violation of the Computer Fraud and Abuse

Act, conversion, breach of an employment contract, and tortious interference with prospective

economic advantage in no way arise from Defendant's transaction of any business in New York.

(*See* Compl. ¶ 11). Accordingly, § 302(a)(1) is inapplicable and does not provide grounds for the

Court to assert personal jurisdiction over Mr. Mogyl'nyy.

"New York State courts have interpreted C.P.L.R. § 302(a)(2) to mean that a

nondomiciliary is subject to New York's long-arm jurisdiction pursuant to this subsection when

they have committed a tortious act, in person or through an agent, while physically present within

the boundaries of this state." *Wang v. Laview Eagle Eye Tech. Inc.,* No. 24-cv-01822-NSR, 2025 WL 2371222, at *6 (S.D.N.Y. Aug. 14, 2025). As the Second Circuit has explained, "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was *physically present* in New York when he performed the wrongful act." *Sigma Lithium Corp. v. Gardner,* No. 00 Civ. 3228 (HB), 2025 WL 1268311, at *6 (S.D.N.Y. May 1, 2025) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997)). Absent Defendant's presence in New York during the alleged acts, § 302(a)(2) is also inapplicable. Plaintiff has alleged generally that Defendant resides in New York and "purposefully directed his unlawful acts from within the District," which is false. (*See* Compl. ¶ 11; Mogyl'nyy Decl. ¶¶ 29, 31.) The Complaint *does not* allege that he was in New York during the commission of any particular alleged wrong, and therefore, Plaintiff cannot establish personal jurisdiction based on C.P.L.R. Section 302(a)(2).[5] For the aforementioned reasons, this Court lacks specific personal jurisdiction over Defendant and should dismiss this case on jurisdictional grounds *sua sponte* under Federal Rule of Civil Procedure 12(b)(2). *See Sinoying Logistics*, 619 F.3d at 213.

## II.    The Court Should Dismiss This Case Because Venue Is Improper.

This Court should also dismiss this case *sua sponte* because Plaintiff's choice of venue is improper. *See Stich v. Rehnquist*, 982 F.2d 88, 89 (2d Cir. 1992) (per curiam). Venue is proper only in: "(1) a judicial district where any defendant resides, if all defendants reside in the same

---

[5] Further, even in the event that Section 302(a)(2) conferred jurisdiction, "New York law limits § 302(a)(2) jurisdiction to tort claims, so [a party] cannot rely on this provision to authorize specific jurisdiction for [a] contract claim." *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014). See also *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 97, 907 N.Y.S.2d 154, 159 (2010) ("contract claims do not constitute a tortious act within the meaning of the statute"). Plaintiff has alleged a single tort claim for tortious interference with prospective economic advantage. (See Compl. ¶¶ 59-63.) Notably, Plaintiff does not address the tortious interference claim at all in its Motion papers, as it is not a basis upon which Plaintiff seeks injunctive relief. (*See generally* Mot.). Thus, even assuming that Plaintiff can establish personal jurisdiction under Section 302(a)(2), it would be limited to the tortious interference claim, requiring denial of Plaintiff's TRO Motion premised on non-tort claims.

state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b). When assessing venue under 28 U.S.C. § 1391(b), Courts in the Second Circuit employ a two-party inquiry. *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 432 (2d Cir. 2005). First, the court "should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims" and second, "the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Id*.

None of the conditions of 28 U.S.C. § 1391(b) are satisfied here. The Defendant is a citizen and resident of Ontario, Canada—not New York—and has never been domiciled in this District. (*See* Mogyl'nyy Decl. ¶¶ 29-33.)  Plaintiff is likewise a Canadian corporation headquartered in Toronto.  (Compl. ¶¶ 8, 12.)  As a general matter, the conduct underlying these claims did not occur in New York; therefore, no substantial part of the events giving rise to Plaintiff's claims took place in this District. (*See* Mogyl'nyy Decl. ¶ 32.)  The Employment Agreement underlying Plaintiff's claims was negotiated and executed in Canada.  (*See* Employment Agreement, ¶¶ 11, 32, 34.)  Plaintiff's reliance on Defendant's occasional visits to New York or his status as an occupant on a lease is additionally insufficient to establish venue. Moreover, as explained above, Defendant is not subject to personal jurisdiction in this District.  Because venue is improper, this Court should dismiss the action *sua sponte* under Rule 12(b)(3).  *Stich*, 982 F.2d at 89.

## III.    The Court Should Dismiss This Case on Grounds of Forum Non Conveniens.

Independently, the Court should also *sua sponte* dismiss this case on the grounds of *forum non conveniens*. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (discussing the courts' inherent power to dismiss an action *sua* sponte for *forum non conveniens*).  Ontario, Canada, not the Southern District of New York, is the appropriate and convenient forum for this case.

13

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Maersk, Inc. v. Neewra, Inc.,* 554 F. Supp. 2d 424, 451 (S.D.N.Y. 2008) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947)). "The central purpose of the inquiry is to ensure that the trial is convenient." *Accent Delight Int'l Ltd. v. Sotheby's,* 394 F. Supp. 3d 399, 409 (S.D.N.Y. 2019) (internal quotations and citations omitted). Courts in the Second Circuit employ a three-part analysis when determining whether to dismiss a case on *forum non conveniens* grounds. *City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 751 F. Supp. 3d 356, 365–66 (S.D.N.Y. 2024); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-75 (2d Cir. 2001) (en banc). First, the court determines the degree of deference afforded to the plaintiff's choice of forum. *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005). Second, the court considers "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id*. If such a forum exists – as it does here – the court must then "balance factors of private and public interest to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir. 2003). "The central purpose of a forum non conveniens inquiry is to determine where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir. 1991). Under this analysis, Canada is the most convenient forum for this dispute.

### A.    Plaintiff's Selected Forum Should Not Receive Any Deference.

The Court should not give Plaintiff's selected forum deference because New York is not the convenient forum for any party. "The degree of deference afforded a plaintiff's choice of forum 'moves on a sliding scale depending on the degree of convenience reflected by the choice

in a given case.'" *Merrill Lynch, Pierce, Fenner & Smith Inc.,* 751 F. Supp. 3d 356, 366 (S.D.N.Y. 2024) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005). Courts consider the following facts when determining whether a plaintiff's choice of forum was likely to have been motivated by convenience include: "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense." *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 497 (S.D.N.Y. 2007).

Each of these factors weighs against affording deference to the Plaintiff's choice of forum. Plaintiff's residence has no relation to New York as it is headquartered and operates in Canada. Based on the nature of the claims alleged in Plaintiff's complaint and the parties involved, the potential witnesses in this case are more likely to reside in Canada than any other location and thus cannot be compelled to attend a trial or any other proceedings in New York. As to the third factor, Defendant is not amenable to this forum as he lives in Canada and does not have any intention to return to the United States, nor does he have a valid visa. (Mogyl'nyy Decl. ¶¶ 32-33.) There is no dispute of the availability of appropriate legal assistance to Plaintiff in Canada as Norton Rose Fulbright already represents it. (*See* ECF No. 9-6.) Additionally, "a foreign plaintiff's choice of a United States forum ordinarily receives diminished deference." *Merrill Lynch, Pierce, Fenner & Smith Inc.,* 751 F. Supp. 3d 356, 366 (S.D.N.Y. 2024); *see Sotheby's,* 394 F. Supp. 3d 399, 409 (S.D.N.Y. 2019) (finding the fact that Plaintiffs were residents of the British Virgin Islands and operate on a foreign citizen's behalf to weight against deference).

**B.    Canada Is an Adequate Alternative Venue.**

"The adequate alternative venue requirement of the *forum non conveniens* inquiry is ordinarily satisfied if (1) the defendants are amenable to service of process there, and (2) the forum permits

litigation of the subject matter of the dispute." *VictoriaTea.com, Inc. v. Cott Beverages, Can.,* 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003) "[G]enerally a court may find a forum inadequate only where there is "a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Id.* (internal citation omitted). Defendant is amenable to service in Ontario. Moreover, he legally cannot be served in New York as he resides and is presently in Canada, and has been since before this Action was commenced. (Mogyl'nyy Decl. ¶¶ 32-33.) U.S. courts routinely find that the courts of Canada are suitable alternative forums, and there should be no exception in this case. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.,* 214 F. Supp. 2d 396, 398 (S.D.N.Y. 2002) ("As defendants are amenable to suit in Canada and that forum permits litigation of the subject matter of this action, Canada … [is] a suitable alternative forum.")

### C. Private and Public Interests Weigh in Favor of Dismissal.

The private and public interests heavily weigh in favor of having this dispute adjudicated in Canada and not New York. In evaluating the private interests of the litigants, courts assess the following factors: "(a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive." *VictoriaTea.com, Inc.,* 239 F. Supp. 2d at 384.

These factors makes clear that litigating this matter in New York would impose significant and unnecessary burdens. The parties are both located in Canada, and the majority of cooperative witnesses are likewise based there. Requiring these individuals to travel internationally to attend trial in New York would result in substantial logistical and financial costs. Moreover, enforcing any judgment obtained in New York against a Canadian defendant would necessitate additional legal proceedings in Canada, further complicating and prolonging resolution. These practical realities underscore the inefficiency and impracticality of maintaining this action in New York,

and further strongly support dismissal under the doctrine of *forum non conveniens*.

In *VictoriaTea.com, Inc.,* the Court concluded that the private interest factors strongly supported dismissal of the action on *forum non conveniens* grounds largely because the core of Plaintiffs' claims and dispute rested upon the contractual relationship between a plaintiff and defendants established under the relevant agreement. 239 F. Supp. 2d at 384. The Court held that "that all essential aspects relating to the formulation and performance of the Agreement occurred in Canada. The contract was negotiated and executed there," and the two principal parties in interest were Canadian and based on Ontario. The same is true here. Plaintiff's breach of contract claim arises from an employment agreement that was negotiated and executed in Canada and is governed by Canadian law. (*See* Employment Agreement, ¶¶ 11, 32, 34.) Further, both Plaintiff and Defendant are based in Canada. (Mogyl'nyy Decl. ¶ 32; Compl. ¶ 8; 12.)

The public interest factors to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law." *Id*. at 386. These factors also weigh in favor of dismissing the case. The core dispute is local to Canada and "[a]n action should be tried in a forum familiar with the law governing the case." *Id*. Thus, because "[t]his case has no discernible connection to New York but a very substantial nexus to Canada" and Canada is the convenient forum, the Court should dismiss the Action. *Hbouss v. Bank of Montreal,* 803 N.Y.S.2d 520, 521 (1st Dep't 2005) (affirming dismissal on *forum non conveniens* grounds).

## IV.    PLAINTIFF IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER.

Preliminary injunctive relief is an "extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal citation and quotations

omitted). To demonstrate its entitlement to this extraordinary remedy, Plaintiff must establish: "(1) that [it] will suffer irreparable harm in the absence of preliminary relief; (2) a likelihood of success on the merits of the case; (3) that considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a preliminary injunction." *Kurzon v. Democratic Nat'l Comm.*, 197 F. Supp. 3d 638, 642 (S.D.N.Y. 2016) (alterations added). Plaintiff has failed to satisfy its burden with respect to these required elements. Respectfully, this Court should reject Plaintiff's allegations and deny its motion in its entirety.

### A.    Plaintiff Cannot Succeed on the Merits of Its Claims.

#### 1.    *Conversion*

Plaintiff cannot succeed on its claim for conversion because Plaintiff Stratum AI does not have standing to bring a conversion claim against Defendant. *See, e.g.*, *Lyman Rice, Inc. v. Albion Mobile Homes, Inc.*, 89 A.D.3d 1488, 1489 (4th Dep't 2011) (affirming dismissal of conversion claim where plaintiff did not own the property at issue). Defendant purchased the domain name "stratum.ai" in July 2018, and registered the domain name "stratumai.com" in September 2019. (Mogyl'nyy Decl. ¶¶ 12; 13.) From the time STI was incorporated until around August 2024, STI paid for domain registration using its corporate credit cards. (*Id.* ¶¶ 14 & Ex. A.) Similarly, in or around 2018, Defendant opened the Google Workspace account that the StratumAI business currently uses to host its email accounts on the stratum.ai domain, initially using it for STI's business (which Defendant has continued to do). (*Id.* ¶ 24.)

The StratumAI business was first incorporated on or about April 23, 2020 as a Canadian business corporation called 12018900 Canada Inc., which is the StratumAI operating company. (*Id.* ¶ 4.) At the time the OpCo was incorporated, it was a wholly-owned subsidiary of STI. Plaintiff was not incorporated until June 2024, at or around the time Plaintiff acquired the OpCo.

(*Id.*)  On June 2, 2025, Defendant executed the IP Assignment Agreement with the OpCo.  (*See* ECF No. 9-8.)  The IP Assignment Agreement purports to transfer all rights to Work Product (as defined therein) that Defendant "conceived of or reduced to practice" in anticipation of and/or in connection with his Employment Agreement to the OpCo. Importantly, the OpCo was not a party to Defendant's Employment Agreement with STI, which the IP Assignment Agreement and Plaintiff wrongly suggest.  (*See* IP Assignment Agreement at 1; Mot. at 5-6 & 9-10.)

Further, the IP Assignment Agreement expressly states whom it is intended to benefit: "This Agreement will be binding upon the Assignor's heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns." The IP Assignment Agreement is between Defendant and the operating subsidiary, which is *not* the Plaintiff in this action, and in any event, the IP Agreement has not been assigned.  (Mogyl'nyy Decl. ¶¶ 6, 8.)  Accordingly, Plaintiff cannot succeed on an argument that *Plaintiff* owns the IP it has alleged Defendant converted, since ownership resides with Defendant, STI, or the OpCo. In other words, Plaintiff has not identified any contract conveying rights to the domains, Google Workspace, or other accounts from Defendant to *Plaintiff*.   Plaintiff thus cannot maintain a conversion claim against Defendant.  *Lyman Rice*, 89 A.D.3d at 1489 (observing that "[O]ne [company] will generally not have legal standing to exercise the rights of [an]other associated corporation[]" and affirming dismissal of conversion claim) (alterations in original) (citing *Alexander & Alexander of N.Y. v. Fritzen*, 114 A.D.2d 814, 815 (1st Dep't 1985), *aff'd*, 68 N.Y. 2d. 968 (N.Y. 1986)).

Even setting aside this insurmountable obstacle to Plaintiff's success on this claim, Plaintiff also fails to satisfy the remaining elements of a conversion claim. Under New York law, "'[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods

belonging to another to the exclusion of the owner's rights.' This includes a 'denial or violation of the plaintiff's dominion, rights, or possession' over her property. It also requires that the defendant exclude the owner from exercising her rights over the goods." *Fischkoff v. Iovance Biotherapeutics, Inc.,* 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018) (internal citation omitted).

At no time did Defendant exclude Plaintiff from exercising its rights over the domain name stratum.ai (nor stratumai.com). First, as explained above, Plaintiff had no such rights because the domain names are not Plaintiff's property. Second, Plaintiff disingenuously suggests that Defendant's contact with Namecheap—the domain registrar of the stratum.ai domain, which Defendant contacted after *Plaintiff* wrongfully changed the Namecheap access credentials to block *Defendant* from managing a domain that TSI owns and which he rightfully manages—constitutes an act of seizing control over the domain and depriving Plaintiff possession and use of it. In fact, Namecheap merely opened a dispute when Defendant reported that he could no longer login and that his access had been wrongfully terminated, which caused Namecheap to put a hold on the account used to manage the stratum.ai domain pending resolution of the ownership dispute. (Mogyl'nyy Decl. ¶ 22.) Critically, Defendant never seized control of the domain (he never successfully gained access to the account, making that impossible), the web addresses never stopped directing users to the right website, and Defendant never had access to the servers where the website itself was hosted, so he could not have and did not alter any content. (*Id.* ¶ 23.) Indeed, Plaintiff concedes that Defendant never had control of the domains by arguing that Defendant 'attempted to gain control,' and noting that such attempts, if successful, could have resulted in Plaintiff being denied access. (Mot. at 2-3.) The cease-and-desist letter Plaintiff sent to Defendant likewise merely refers to Defendant's "attempt to gain control of the domain names." (*See* ECF No. 9-6.)

Plaintiff's argument as to Defendant's conversion of the Google Workspace account falls flat largely for the same reasons. After Plaintiff placed Defendant on administrative leave and blocked him from accessing his email account, daniel@stratum.ai—which Defendant has continuously used for STI-related business since that company's incorporation in 2019—Defendant contacted Google to regain access. (Mogyl'nyy Decl. ¶ 24.) Google responded by initiating a dispute and locking down the account as a security measure, preventing StratumAI employees *and Defendant* from accessing their stratum.ai email accounts, which Defendant did not intend to have happen. (*Id.* ¶ 25.) Critically, Defendant never gained control of the Google Workspace account, which is fatal to Plaintiff's conversion claim to the extent it is premised on his exercising control over that account.[6] For all of these reasons, Plaintiff cannot succeed on its conversion claim, necessitating denial of Plaintiff's Motion to the extent it seeks to enjoin Defendant "from accessing, modifying, or controlling Stratum AI's website, servers, or online accounts." (*See* ECF No. 9-10 (Proposed Order).)

### 2. *Breach of Contract Claim*

Plaintiff cannot succeed on its breach of contract claim because it cannot maintain a lawsuit for purported breaches of Defendant's Employment Agreement or the IP Assignment Agreement, with respect to which Plaintiff is neither a party nor third-party beneficiary. *See, e.g.*, *London Drugs Ltd. v. Kuehne & Nagel International Ltd.,* 1992 CanLII 41 (SCC), [1992] 3 S.C.R. 299

---

[6] Plaintiff contends that Defendant's conduct is analogous to that at issue in *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 288-89 (2007). Yet Plaintiff appears to rely on *Thyroff* only for its holding that electronic records may be subject to a conversion claim in New York—a principle that is now well-established and undisputed by Defendant. The facts in *Thyroff*, however, differ significantly from those alleged here. In *Thyroff*, the plaintiff was terminated as an insurance agent for the defendant's company, and upon termination, the company repossessed the computer hardware and software leased to the plaintiff during his employment. As a result, the plaintiff lost all access to his customer information and other personal data stored on the confiscated computers. Here, Defendant never had control over the domains, the server hosting StratumAI's website, or the Google Workspace account, and *Thyroff* is thus inapposite. Additionally, while preserving STI's claim to ownership of the domains and Google Workspace account, Defendant cooperated with StratumAI to ensure that no changes were made to the domain registrar service that could potentially disrupt the business operations of the company. (Mogyl'nyy Decl. ¶ 26.)

(maintaining that the doctrine of privity of contract stands for the proposition that a contract cannot, as a general rule, confer rights or impose obligations arising under it on any person except the parties to it but acknowledging a limited exception for relationships of employer-employee and employer-customer).[7] Plaintiff alleges that Defendant breached the Employment Agreement and the IP Assignment Agreement by "retaining and asserting control over the stratum.ai domain, attempting to re-register it to himself through Namecheap, and refusing to return corporate assets" in violation of property-return provision of the Employment Agreement and the IP Assignment Agreement. (Mot. at 10.)

It is beyond dispute that on October 24, 2020, Defendant entered into an employment agreement with STI, not the Plaintiff in this case, 16161782 Canada Inc. The Employment Agreement states that it "will inure to the benefit and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee." (Employment Agreement, ¶ 38.) "Employer" is defined as STI, and does not include subsidiaries or affiliates of STI, nor does it mention Plaintiff or the OpCo. (*See generally id.*) The Employment Agreement has never been amended, nor has it been assigned to Plaintiff or the OpCo. (Mogyl'nyy Decl. ¶ 8.)

Finally, Defendant has not breached either agreement: he has not "retained" or "asserted" control over the stratum.ai domain; he has, in fact, cooperated with Plaintiff to ensure that that no changes were made to the domain registrar service. (*Id.* ¶ 26.) For each of these reasons, Plaintiff is unable to maintain a breach of contract claim against Defendant based on either the Employment Agreement or the IP Assignment Agreement, and its Motion must be denied to the extent Plaintiff

---

[7] Both the Employment Agreement and IP Assignment Agreement are governed by the laws of the Province of Ontario. (Employment Agreement, ¶ 34; IP Assignment Agreement, Schedule A, ¶ 1.)

seeks to enjoin Defendant based on his alleged violation of those agreements.

### 3.    *Computer Fraud and Abuse Act*

Plaintiff also cannot succeed on its claim under the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 because the Defendant never accessed any computer without authorization. A violation of the CFAA occurs when an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage." *Jobpath Partners, LLC v. City of New York & CDW Gov't Serv.*, No. 24 civ. 9026 (CM), 2025 WL 2855372, at *38 (S.D.N.Y. Oct. 8, 2025) (citing 18 U.S.C. § 1030(a)(5)(B)).  CFAA "provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Spec Simple, Inc. v. Designer Pages Online LLC*, 54 N.Y.S.3d 837, 842 (Sup. Ct. N.Y. Cnty. 2017) (internal quotation and citation omitted).

Plaintiff incorrectly asserts that Defendant *accessed* its systems. Instead, Defendant contacted Google in order to attempt to restore his access to the stratum.ai domain so that he could access his inbox, but never actually obtained access.  (Mogyl'nyy Decl. ¶ 24.)  Google's protocol in response to Defendant's request was to block Plaintiff from accessing its email accounts.  (*Id.* at ¶ 25.)  Moreover, Defendant's access was never restored by Google.  Despite this result – which was completely out of Defendant's control nor was it his intention – he did not in fact access the domain or any other computer without authorization. Merely contacting Google does not amount to access. As stated above, Plaintiff concedes that Defendant never had control over the domains.

(*See* Mot. at 2, 3).[8,9]

### B.    Plaintiff Will Not Suffer Irreparable Harm Absent an Injunction.

The central thrust of Plaintiff's request for a temporary restraining order is that Defendant's "ongoing unauthorized access to Stratum AI's systems … presents a continuing threat of data loss and operational paralysis" and that Plaintiff's "clients have received false and harassing communications purporting to come from StraumAI leadership."  However, as explained above, Defendant has cooperated with StratumAI to ensure access to the domain name registrar accounts and Google Workspace administrator account (and stratum.ai mailboxes) was restored pending the outcome of this dispute, while fully reserving his and STI's rights and claims to ownership.  (*See* Mogyl'nyy Decl. ¶¶ 25-26 & Ex. D.)  Further, Defendant has not engaged in harassment and has

---

[8] Plaintiff attempts to analogize Defendant's conduct to that of the defendants in *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015), where former employees retained system access and copied proprietary software. But that comparison fails. In LivePerson, the court explicitly rejected the CFAA claim, holding it was "inadequately pled" because the complaint did not sufficiently allege that the defendants had "exceeded authorized access" to the plaintiff's computer system.  *Id.*  Plaintiff's reliance on LivePerson is therefore misplaced—it undermines rather than supports Plaintiff's position. To the extent Plaintiff had access to the Google Workspace administrator account, that access was authorized. And, after Plaintiff cut off Defendant's access, Defendant never regained access, even after he contacted Google.  (Mogyl'nyy Decl. ¶ 25.)

[9] Plaintiff makes no mention of its tortious interference with prospective business advantage claim in its Motion, but it also cannot succeed on this claim.  "In order to state a claim for tortious interference with prospective economic advantage claim under New York law, a plaintiff must allege: "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HPB) 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006); *see also Pub. Free Will Corp. v. Verizon Commc'ns Inc.*, No. 15-CV-6354 (RRM) (JO), 2017 WL 1047330, at *5 (E.D.N.Y. Mar. 17, 2017) (In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must establish the following: "(1) [the plaintiff] had a business relationship with a third party").  "A complaint must also include a sufficiently particular allegation of interference with a specific contract or business relationship of the plaintiff." *Watson v. Riptide Worldwide, Inc.*, 2012 No. 11 Cuv, 0874(PAC), WL 383946, at *6 (S.D.N.Y. Feb. 7, 2012).

The vendor and client relationships that Plaintiff alleges Defendant has tortiously interfered with exist pursuant to contracts with the OpCo or STI, not Plaintiff.  Therefore, Plaintiff cannot establish that Defendant interfered with Plaintiff's business relationships with third parties.  And, in any event, Plaintiff does not identify any specific business relationships of its own that Defendant allegedly interfered with.  *See generally* Compl; *Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, No. 16 Civ. 9918 (ER), 2018 WL 1027754, at *5 (S.D.N.Y. Feb. 20, 2018) ("[C]ourts in this District are clear that where a party cannot identify specific third party relationships [with plaintiff] that were disrupted, a tortious interference claim cannot lie."); *American Lecithin Co. v. Rebmann*, No. 12-CV-929, 2017 WL 4402535, at *23 (S.D.N.Y. Sept. 30, 2017) ("[T]he complaint must allege 'interference with a specific identified business relationship [between plaintiff and] a third party.") (internal citation omitted).

a right to communicate with investors. Accordingly, an injunction is not necessary to maintain the status quo. *See, e.g.*, *Int'l Gemmological Inst., Inc. v. Indep. Gemmological Labs, Inc.*, No. 00 Civ. 4897 (LAK), 2000 U.S. Dist. LEXIS 12907, at *2 (S.D.N.Y. Sept. 7, 2000) ("Given [defendant's] actions and representations, plaintiff is not threatened with irreparable harm through infringement of its claimed IGI trademark.") (denying injunctive relief where defendant voluntarily ceased its allegedly infringing conduct).

### C.    The Balance of Equities Favors Defendant, Not Plaintiff, and an Injunction Does Not Serve the Public Interest.

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.,* No. 1:21-cv-00038-MKV, 2021 WL 535485, at *9 (S.D.N.Y. Feb. 12, 2021). Contrary to Plaintiff's position, the relief sought would improperly restrain Defendant based on claims for which Plaintiff lacks both a legal entitlement and a likelihood of success on the merits. As outlined in prior sections of Defendant's opposition, granting such an injunction would cause tangible harm to Defendant by allowing Plaintiff to exert control over contracts, relationships, and property that are, at minimum, subject to a genuine dispute of ownership. Further, because Plaintiff has "failed to substantiate any irreparable harm in the absence of an injunction, the balance of the equities cannot tip in favor of [Plaintiff]." *SG Cowen Sec. Corp. v. Messih,* 2000 WL 633434, at *6 (S.D.N.Y. May 17, 2000), *aff'd,* 224 F.3d 79 (2d Cir. 2000).

## V.    Plaintiff's Proposed Temporary Restraining Order Is Vague and Overly Broad.

The relief Plaintiff seeks in its proposed temporary restraining order is broader than necessary and should not be entered by this Court. "Although a district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct,' it is

nonetheless 'the essence of equity jurisdiction' that a court is only empowered 'to grant relief no broader than necessary to cure the effects of the harm caused by the violation.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quoting *Forschner Grp.,* 124 F.3d at 406); *see also* Fed. R. Civ. P. 65(b)(1).  Thus, the Second Circuit has "instructed that injunctive relief should be narrowly tailored to fit specific legal violations, and that the court must mould each decree to the necessities of the particular case." *Mickalis Pawn Shop*, 645 F.3d at 144.  "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *Id*. at 145.  Plaintiff seeks to enjoin Defendant from engaging in the following activity:

> (1)    from accessing, modifying, or controlling Stratum AI's website, servers, or online accounts;
> (2)    from representing himself as affiliated with Stratum AI in any communication;
> (3)    from contacting Stratum AI's clients, partners, or vendors;
> (4)    from disseminating any further false or harassing information concerning Stratum AI or its personnel.  (ECF No. 9-10 (Proposed Order.)

As explained in Section III.A, Defendant has voluntarily ceased accessing or modifying any of Stratum AI's websites, servers, or online accounts. Thus, there is no basis for injunctive relief since Defendant does not have access to any of the  electronic systems Plaintiff claims ownership of as this stage. Regarding request number two, Defendant is the CEO of Stratum Technologies Inc., a Delaware corporation and former parent of the OpCo. Prohibiting him from representing any affiliation with Stratum AI is unwarranted and would force him to make an untruthful statement. It is additionally unreasonable to prevent the Defendant from discussing his extensive experience at the company as Chief Engineer given that he developed the company's platform. The term 'partners' in request number three is vague and ambiguous. Finally, request number four improperly suggests that Defendant has disseminated false or harassing information about Stratum AI or its personnel, which Plaintiff fails to substantiate.

26

## <u>CONCLUSION</u>

Plaintiff has failed to meet its burden of establishing that it is entitled to the extraordinary remedy of preliminary injunction relief.    Accordingly, Plaintiff's Motion for a Temporary Restraining Order should be denied.    In addition, this Action should be dismissed in its entirety because the Court cannot assert personal jurisdiction over Defendant, because venue was improperly laid, and on grounds of *forum non conveniens*.


Dated:  October 20, 2025                           Respectfully submitted,

                                                    MINTZ, LEVIN, COHN, FERRIS,
                                                    GLOVSKY AND POPEO, P.C.


                                                    */s/ Todd Rosenbaum*
                                                    Todd Rosenbaum
                                                    Daria Schieferstein
                                                    919 Third Avenue
                                                    New York, New York 10022
                                                    TFRosenbaum@mintz.com
                                                    DSchieferstein@mintz.com
                                                    Tel: (212) 935-3000
                                                    Fax: (212) 983-3115

                                                    *Attorneys for Defendant Danylo Mogyl'nyy*

27